which is Umeda v. Tesla. Good morning, Your Honor. My name is Vahey Kojayan and I represent appellants Tomomi and Umeda who filed a product liability case here. I'm sorry, but I can't hear you. Good morning, Your Honor. My name is Vahey Kojayan and I represent appellants Mio and Tomomi Umeda. This is an appeal from the District Court's dismissal of the case based on form of nonconvenience. We assert that the District Court made factual errors of law in dismissing the case and abused its discretion by failing to appeal the correct standard to form of nonconvenience motions, failing to give sufficient deference to plaintiff's choice of form, and failing to properly balance the private interest factors and deeming the case dismissible in favor of a Japanese form. As a background to prevail on a form of nonconvenience, the defendant bears a strong and heavy burden of showing that there is an adequate form in a different jurisdiction, which we do not dispute Japan is an adequate form. And also the defendant has to make a strong showing that private and public interest factors favor the dismissal of the case and transfer of the case to a different jurisdiction. In that case, defendant didn't even come close to making such showing. Now the standard for dismissal of form of nonconvenience is not a routine remedy. It's a drastic exercise of court's inherent power and should be exercised sparingly. And for that reason, the courts require that defendant make a strong showing, not just a regular showing, not just a tipping of the scales of the factors or slight balancing of the factors in favor of one participant instead of the other. That is why the original case, Kyle Coyle versus Gilbert, articulated that there has to be a showing of oppression and vexation to the extent that it outweighs any convenience that foreign plaintiffs or any plaintiff has in trying the case in their chosen forum. That's why we require a strong showing of that. That standard was adopted by this court in the case of Robello and the Karihana subsequent cases. And unfortunately, in this case, the district court simply did not adhere to that standard. Again, the burden is on the defendant to make a strong showing that any convenience to that plaintiff has in trying the case here outweighs any oppression and vexation it will suffer. And district court's findings and the specific language of the scales are being tipped in favor of trying this case in Japan simply do not amount to any oppression or vexation, do not even come close to that, that Tesla will suffer if this case was tried in Tesla's home jurisdiction of Northern District of California. To reiterate, forum nonconvenience doctrine does not look to find an optimal forum for the defendant. It simply seeks to find the convenient forum based on balancing of six or seven private and public interest factors to find where the case is more likely and more convenient to be tried. And the burden is on the defendant to establish, to make a strong showing that these factors weigh in favor of dismissal. Obviously, your hardest burden here is the abuse of discretion standard. So it would be helpful for me if you focus on how the district court abuses discretion. Now, I gather that you have a sort of implicit argument that there was, you applied the wrong standard, I guess you're saying. Is that what you're saying? That is one of them, Your Honor. And the second, well, first, the important abuse of discretion is the district court failed to give deference to plaintiff's choice of forum. We understand and we're fully cognizant that foreign plaintiffs do not enjoy the same substantial deference to their choice of forum as domestic plaintiffs do. But there are exceptions to this rule. If the case brought in this forum has bona fide connections to the forum, factually or otherwise, then the foreign plaintiffs are entitled to increase deference to their choice of forum. And the more the connections, the more the deference that they should be afforded. In this case, there is absolutely no dispute. And district courts actually stated this in its order dismissing the case, that the case has bona fide connections to this forum. After all, defendants located here, the product that we're alleging is defective, the autopilot software was— So the district court credited Tesla's showing that the Japan-based evidence would be difficult for them to procure. Do we have to find that that finding was clearly erroneous for you to prevail? Yes, Your Honor. And the district courts— that was another error that the district court made concerning Tesla's evidence. Now, difficulty itself does not amount to oppressiveness and vexation against Tesla. District courts' exact words were, it's difficult if not impossible for Tesla to obtain Japanese evidence. Now, that is not supported by anything on the record. Tesla's own witness, Tesla's own expert witness simply said, yes, it takes a longer period of time. To be fair to them, they used the word inordinate amount of time, but that doesn't mean impossibility. That doesn't mean to go through diplomatic channels, essentially. That is correct, Your Honor, but it's still possible. It's difficult, agreed and understood, same way that it would be difficult for us to subpoena and get evidence of the witnesses that are not under Tesla's control who are former employees of Tesla in California. Do we know specifically what Tesla's defense is here? And what did they say about why— your position is this is a product's liability case. What matters is the design of the product and what went wrong with the design of the product, essentially. And their position, I am assuming, is, well, no, that's not it at all. The problem is that the driver fell asleep and didn't do what he was supposed to do, and it wasn't our problem. Is that essentially where we are? That is where we are, Your Honor, except we agree that driver falling asleep is a problem. We don't agree that it is the problem. Again, this is a product liability case. There is no dispute whatsoever— But in terms of what that means about what evidence Tesla claims to need access to, part of it is the evidence about damages, but part of it presumably are percipient and other witnesses about how the accident actually occurred. Yes, Your Honor. I will address that. Tesla's defense, in my understanding, based on their briefs, is driver's negligence will be relevant to their contributory negligence defense in this case. There is no dispute that driver was negligent. Driver was convicted in a Japanese court. Plaintiffs have the conviction records. Tesla at the time stated that they were unable to obtain those, but we have those. We are obligated to produce those records to Tesla based upon discovery requests or as part of our Rule 26 disclosures. There is no question that Tesla will be able to obtain that evidence. A more important question is what will that evidence accomplish? How material is it in this case? As this court in lieu of stated, it's not just the quantity of evidence. It's the materiality of it that counts. Yes, there is no dispute that the driver is negligent. We get the Japanese conviction records. We get the driver's own willingness to testify in this case, and the driver will simply deliver. Well, that is a procedural problem, right, in the sense that you didn't say that until the motion to reconsider. Fair enough. That is correct, Your Honor. That doesn't make it— No, it's not very useful to keep saying that because it's not in the record that we have it before us unless we overturn the district court's refusal to accept it. Correct, Your Honor. Well, two issues with that. The district court actually did consider it, and in their order denying the motion for reconsideration, district court stated that, well, even if this evidence was before me— They said even if, but he first refused to consider it. Well, first refused to consider it and then actually did consider it, saying, with this evidence even, we don't believe that the balance tips in favor of keeping this case in this forum. But that aside, again, the driver's evidence and driver's negligence is not in dispute. The driver fell asleep is not in dispute. Conviction is not in dispute. It's in the ARC complaint itself. We are not going to dispute those facts. These documents are in our possession and subject to production to Tesla. I do not see what materially they will add to this case or what material value they will present to this case to make it oppressive for Tesla to go through the extended period of time to obtain them through the consular channels in Japan. Similarly, we can argue about the witnesses that Tesla stated that they intend to call that may or may not be outside of this court jurisdiction. Now, very important that Tesla has not identified any specific witnesses. The only statement we have for Tesla about the witnesses is, and I'm paraphrasing, that Tesla understands that third-party witnesses are unlikely to be subject to discovery in this case or consent to discovery in this case. The important point here is that Tesla has not shown that any witnesses are unwilling to come and testify. They have not even identified the specific witnesses they intend to call. We do not know who these witnesses are that are presumably not subject to discovery. It's an assumption. We're not saying that Tesla has to prove it beyond reasonable doubt there are witnesses, but at least some specifics would be helpful to have a showing for unwillingness of the witnesses. And you have a dispute between you as to whether the case law cares about whether they're unwilling or not unwilling, and sometimes the case law says unwilling witnesses and sometimes it doesn't say that. Well, one of the factors, Your Honor, in forum nonconvenience is the court's power to compel unwilling witnesses. The burden is on Tesla to show that, first, there are unwilling witnesses, and second, this court doesn't have power to compel those. Tesla has not demonstrated any of that. We do not have a single line on the record saying witness X is unwilling to come and testify in California. Therefore, we need discovery in Japan. We need the case to be heard. What did the district court say about that issue? The district court merely said, relied on Tesla's assertion that it will be difficult, almost impossible, to obtain that testimony. There was no clear finding of any unwillingness of the witnesses from the record that I see. The converse should also be considered. Again, district court focused on what's good for Tesla. What can Tesla do? Forum nonconvenience is not about the optimal forum for Tesla. The district court did not give any credence to what will happen to the 27 former Tesla employees that actually did specifically identify and is part of the record if this case is tried in Japan. How will the Japanese court have any compulsory power to enforce evidence from these 27 former employees? Did you mention particular people and why they mattered? Yes, Your Honor, and we did mention because these were former engineers and former employees of Tesla who specifically worked on the autopilot program and quit the autopilot program in, I believe, 2019 over safety concerns. And that was in our original Rule 26 Letter 2, or Evidence Preservation Letter 2. And what did the district court say about that? The district court did not address that. And that, we believe, is one of the other errors here. And one final point, Your Honor, and I would like to reserve the remainder after this for rebuttal, is that district court considered only two factors, access to physical evidence and access to the unspecified witnesses by Tesla. The district court did not consider the cost of moving the witnesses and trial, again, the unwillingness of the witnesses and the residence of witnesses at the parties. Now, considering only two out of seven available factors is already a use of discretion, and that the bare-list district court should give credence to the remaining factors and very majorly to the fact that Tesla is located in this jurisdiction. We're on their home court. They cannot possibly show oppression and vexation against them if they're trying a case on their home court based on some imaginable witnesses who they allege are not willing to testify. With the court's permission, I'll reserve the remaining time for rebuttal. Okay. Mr. Brundage. Good afternoon, and it just barely is afternoon. May it please the court, my name is Robert Brundage with Bowman & Brooke. I am counsel for the athlete Tesla. And what I would like to do with the court's indulgence first is respond to some of the questions that the court asked Mr. Kojayan and then go back and drill down onto a couple of points and respond to a couple of things Mr. Kojayan said. So taking them in order, he said that Tesla has a strong and heavy burden. That is incorrect. That's standard for a resident plaintiff. That is not the standard for non-resident plaintiffs, which is the situation here. And I believe the Sinochem case from the U.S. Supreme Court says that. Second, he said that the district court failed to defer to the plaintiff's choice of forum. Well, the district court, if you look at the court's order, and I'm sure your honors know this, the district court did say that she owed deference to the plaintiff's choice of forum, just not as much as if the plaintiff's had been forum residence. And she expressly pointed out that less deference is not zero deference. So the idea that she did not defer is simply unsupported. It's just that deference doesn't automatically mean that the plaintiff wins. It's a light thumb on the scale when you have a forum resident plaintiff, but it is not on its own dispositive. And as far as I can tell, the complaint here is that the trial court didn't give it dispositive weight, and the trial court wasn't required to. Mr. Kojayan said that the trial court said that discovery would be essentially impossible for evidence based in Japan and that that wasn't supported. Actually, Tesla's expert witness, Mr. Yamashita, said directly in his declaration supporting the forum nonconvenience motion that it would be essentially impossible to obtain evidence, for Tesla to obtain evidence that was located in Japan if the case stayed in the United States. And that's an excerpt of record, page 354. Well, why is that? First of all, there is a consular system, I gather. And second of all, it would only be difficult if the plaintiffs didn't already have it or if their people would be unwilling to come. Well, okay, so first of all, having to go through the diplomatic channel is extremely burdensome. So you may have noticed from Mr. Yamashita's declaration, Japanese law controls not only depositions and formal discovery, it even controls informal discovery like witness interviews. You have to go through diplomatic channels and courts in order to do even that. And so that's extremely difficult and time consuming. And then in the diplomatic channels, the only way you can take a deposition in Japan is if the witness is willing, because you cannot compel an unwilling witness, and if it takes place at the U.S. Embassy or U.S. Consulate. And they don't have any reservations currently available. And they're booked for a long time, and it's extremely difficult. And again, you can't compel them. It's only if they are willing. Can you speak to, counsel, plaintiff's difficulty of obtaining the testimony of, say, former employees of Tesla if the case were moved to Japan? Yes, Your Honor. So the Japanese court, I agree, would not be able to compel it, but a federal court in the United States would under 28 U.S.C. Section 1782. And the district court pointed that out. She said that she wasn't prepared to rule at present on whether such a mechanism would be successful. But if you look at the letter of the statute, if the plaintiffs can make a showing that they need the testimony and it's subject to all the normal constraints on discovery, Section 1782 authorizes the district court to compel testimony and documents. And so that, I mean, you know, people in discovery, in lawsuits, they always say they're going to take more discovery than they do. The plaintiffs listed 27 witnesses. It seems unlikely that they would take 27 depositions or that the court would be required to allow them or would allow them. But in principle, if they can show that they need a former employee, Section 1782 provides a route for them to do that. And in addition, they have access to all the evidence that Tesla, you know, the current employees and all the documents in Tesla's possession, because the district court conditioned the dismissal on Tesla's being willing to produce the documents in Japan. And so on the one hand, you have some speculative possibility that plaintiffs would not be able to get every last former employee, but the main evidence of what they want, you know, Tesla's decisions on autopilot and things like that, they would be able to get. And on the other hand, you have expressed findings by the district court that if this case continues in California, Tesla will not be able to obtain the evidence that's in Japan. What specifically does Tesla say it needs and how specific does it need to be? Okay. As your opponent said, we know the driver was negligent. So what else matters? So first of all, causation. This is largely a failure to warn case. And the person who supposedly would have acted on the warning is the driver, Ito. So in order to prove causation and a failure to warn case, you have to prove that the person who would have received the warning would have done something different, but didn't know the fact that they were supposed to be warned about, and would have done something different had they been warned. The warning is don't fall asleep? What's the warning? Well, the warning is you've got to, even when the vehicle is in autopilot, you have to continue to pay attention and be ready to take over. And so, for example, how experienced was Mr. Ito with the autopilot system? How much had he used it? What had he been doing that day that caused him to fall asleep? And was it negligent for him even to get behind the wheel? Because that's comparative fault, even if it's not blocking of liability. And so, for example, the court was obviously completely correct. The district court was under no obligation to consider the late submitted evidence about Mr. Ito's supposed willingness, especially when, as the court pointed out, there would be no way to enforce his promise to appear if he decided he didn't want to, if he changed his mind. And also, he's only one witness, but there was an occupant in the vehicle, there were other, there's first responders, there's the whole accident investigation, and all the people who conducted the investigation, what they found, things like that. TESLA needs all of that in order to understand what happened with the accident, why Mr. Ito did what he did, whether a warning would have changed his behavior. And it's entitled to rely. So the merits of the case are that he wasn't sufficiently warned that he needed to stay awake? No, the plaintiffs allege that he wasn't sufficiently warned not to rely on the autopilot system. And that's it? There's nothing about the way the autopilot operated that's the issue? Honestly, as I sit here, I am not sure. I think they have a claim, a design defect claim, but I'm not certain of that. But they certainly have a warning claim, which they have emphasized. And we need evidence on the warning claim to be able to show whether the supposed failure to warn actually, whether Mr. Ito knew this. I would suggest, if they want to maintain this case, that the warning case seems ridiculous. I mean, everybody knows that you can't fall asleep when you're driving a car, even if it's an autopilot car, so it just seems absurd. Well, hopefully, Your Honor would be the one to decide it. But they're saying that they need to know, I mean, by insisting that they need to have access to witnesses concerning the way the machine operated, they obviously seem to be going beyond a warning issue. I think that's correct, although I think they also want to know what they want to claim that, let's see. We also need to know what Mr. Ito was told by the dealer representatives in Japan. That, again, goes to causation. But the fact that the plaintiff's, some of their evidence is in the United States, doesn't defeat Tesla's right to take the evidence in Japan. And also, as the district court expressly found, the damages evidence is in Japan. And the court was not required to accept the plaintiff's representation that the damages evidence, that they have the damages evidence. They didn't provide it to the court. They didn't say what it was composed of, except pay stubs. They didn't provide any reason to think it was going to be admissible. Obviously, we can't use evidence that's not admissible. That doesn't do us any good. And also, to the extent, you know, that it's coming from the Omedas themselves, they're interested parties, and we are entitled to test that evidence by discovery from other people. So the point is that there's a lot of evidence in Japan, which the district court specifically said was most of the damage evidence and some of the liability evidence. And the court found specifically that we cannot obtain that. And to go back to a question that Judge Berzon asked a little while ago, were we required to make a showing that a witness was unwilling to come to the United States? The answer to that is no. Well, I don't know about that. I mean, a lot of the case law does say that the issue is whether you can subpoena unwilling witnesses. That seems logical. I agree, but the point is we don't have to prove that the witnesses were, in fact, unwilling. The issue is if the witness is unwilling, is there some way for the court to compel the witness to testify anyway? We do not have to make a showing that there are specific witnesses and that they were unwilling to come to the United States. And Piper, the Supreme Court's decision in Piper, directly speaks to that. It says that the defendant's showing there was sufficient when they provided categories of witnesses. They did not submit any evidence that the witnesses were unwilling to testify. The same was true in Luke. Categories of evidence, no submission of unwillingness to testify. And in this instance, it would be impossible to submit evidence like that. Because remember, Japanese law restricts even the ability to interview people. How are we supposed to provide evidence that a specific person has useful information, relevant information, that they won't testify when we can't interview them and we can't compel them to talk to us? It's a catch-22. And that is precisely why Piper said that the court of appeals there had erred by requiring a detailed showing. And Luke doesn't require any such showing. I have a question about the conditions, because you're running close on time. One of the conditions is that the Japanese, any Japanese judgment be enforceable in the United States. How can Tesla agree to that? In other words, is this an agreement that they won't – I mean, there has to be – it's up to the court whether it's enforceable. The only thing Tesla could be agreeing to is not to contest it, I guess. Yes, I think that's right. Honestly, I have not researched that specific question in preparation for this argument. I would be happy if you would like to submit a supplemental brief on that. It just seems pretty presumptuous to me for Tesla to be agreeing that it's enforceable. I mean, whether it's enforceable depends, you know, what it is and how it's trying to be enforced and what court you're trying to enforce it in here and what the law is about, whether it's enforceable. And I don't know how Tesla can just agree to that. Well, if the court can impose it, surely it doesn't take anything away from the condition that the party also agrees to it. I mean, the condition doesn't become less reasonable. Well, I know, but the court can't make it enforceable either. I mean, the court – I mean, this court in this – as I understand it, the court is not imposing the condition that it is enforceable. It is saying that Tesla has agreed to the following conditions, one of which is it's enforceable, or it will be enforceable, but I don't understand how that operates exactly. Again, if you'd like, I'd be happy to submit a brief on that. My general understanding, but this is not informed by specific research, is that if you have a foreign judgment, then the person who obtained that judgment can come to the United States and turn it into a U.S. judgment, and from that point it becomes enforceable like any other judgment. But I do not know the details. If I may, because the court has seemed interested in the facts about whether we could compel people in Japan to testify, I'd like to go into that for a second. So the court knows that the district court found that production of evidence by Tesla in a Japanese action – the evidence located in Japan, however, is as a practical matter unavailable to Tesla if the case remains in this court. And the liability evidence is the passenger in the Tesla, the driver of the Tesla, the accident witnesses, the first responders, much of the damages evidence is in Japan. The support for that is Yamashita Declaration, paragraph 15, ER 354, and also, I think it's the next paragraph, also 16, Japanese law – he specifically says it will be impossible. Japanese law only allows a party to foreign litigation to obtain documents from a third party residing in Japan or conduct interviews and depositions of a third party witness in Japan for use in U.S. litigation through diplomatic channels in Japanese courts. And he opines, and this was not contradicted, that it's complicated, time-consuming, and burdensome, and that a third party cannot be compelled to produce documents or be interviewed or deposed. And the district court noted that that was also supported by the Minami Declaration that the plaintiffs submitted because Mr. Minami said, well, a court can coordinate – a U.S. court can coordinate with a Japanese court and get evidence. But the district court was right to say that's going to be very burdensome, and you can't get very much evidence that way because it's so cumbersome. And the representations by the Plaintiffs' Council, the court – the district court, under the clearly erroneous standard, decides what evidence to credit. And unless its decision is clearly erroneous, it can't be overturned on appeal. And the district court's decision – I'm sorry? Your time is up, so wrap up. Well, thank you, Your Honor. Okay, thank you very much. Mr. Kojian – Kojivan. Yes, Your Honor, thank you. Your Honor, to quickly address, Tesla's counsel's assertion that the strong burden is disproven by the Sinikim case, not accurate. The Sinikim case doesn't say that defendants do not have to show oppression or vexation to be able to transfer this case out of this forum. The oppression and vexation standard is still the standard to be shown. Again, based on counsel's arguments, we still do not have any idea of what witnesses they intend to call. If Tesla's position is to be adopted, then a mere allegation that there are some ethereal witnesses who are unwilling to appear will be sufficient to defeat a forum nonconvenience. Is it true that – is it correct that obtaining in Japan the testimony of American witnesses is a fairly straightforward statutory procedure? In Japan, obtaining testimony of American witnesses? In other words, through federal statute. Well, Your Honor, I think counsel's referencing 28 U.S. 1782, for which the Japanese tribunal has to make a request to the district court in this district to set procedures and provide for discovery of witnesses who are subject to this district's jurisdiction. Now, two problems with that. There is no evidence how burdensome or how difficult or how possible that will be to begin with. Second, if that is the case, then we are essentially conducting a bulk of discovery for a case in Japan in this district. How does that possibly make the forum in Japan more convenient when there are 27 witnesses that plaintiff needs to intervene that are subject to this court's jurisdiction and are being interviewed and deposed in this district? Doesn't that in and of itself make this district – Related to that is this was represented to be a failure to warrant case. Is that right? That is not only the case, Your Honor. This case is about how the sensors function, how the cameras function. And again, I agree with the court. How is the warning going to do anything if the driver's asleep? There is no dispute he was asleep. Interviewing the driver and the passenger is merely going to reaffirm that he's asleep. This is not only a failure to warrant case. This is a substantial case, and there are substantial allegations on the record that establish how the autopilot functioned improperly, how it didn't predict situations, common driving situations like this, and common situations where a driver may fall asleep while relying on the autopilot. So it's a defect of the design case, not merely failure to warrant, failure to bid when the driver falls asleep. Counsel, I have a question. The clear error standard in this circuit is the decision of the trial court must be implausible, illogical, or cannot be inferred from the facts in the record. Would you please tell me what error the trial court made under that standard? In one sentence, Your Honor. The trial court's finding that the balance of factors merely tips in favor of Tesla does not amount to oppression and vexation against Tesla. And even if the factors by trial court's own finding merely tip the scales in favor of Tesla, they do not amount to vexation. And the trial court's lack of finding that there is vexation is itself illogical based on factors considered. Okay. It's illogical. Thank you. Thank you very much. Thank you, both of you, for your argument. And Judge Bea has some statements he'd like to make about the importance of this day. Thank you very much, Judge Berzon. Today is the anniversary, the 80th anniversary of the Pearl Harbor attack, and I move that we adjourn in memory of the fall of the brave men and women of our armed forces who served and fought and died in World War II to save our country from destruction. I remember December 7, 1941. As a child in Cuba, we heard the news on the radio that Pearl Harbor had been bombed. My family had just spent two years in Los Angeles. I could not understand why anybody, any nation, would attack America. During those two years, the Americans we knew in California had always been nice, kind, and generous to us, foreigners from Europe and Cuba. I thought of all Americans as good people and America to reflect that goodness. Today, despite the many criticisms we hear of our country, I still think of America as a good, kind, and generous country, and we should honor those who sacrificed to keep it that way. Thank you very much, Judge Bea, for your moving remarks. As I was saying, I was born the day, the week World War II was over, so I'm always really moved to hear from people who actually remember it. Thank you very much, and we are adjourned. Thank you. This court for this session stands adjourned.
judges: BERZON, BEA, NGUYEN